UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

UNITED STATES OF AMERICA

    v.

ERIC JAMES STONE

CASE NO.  3:25-cr-*154-MMH-LLL*
18 U.S.C. § 1343
18 U.S.C. § 1341
18 U.S.C. § 1957
18 U.S.C. § 1956

## INDICTMENT

The Grand Jury charges:

## COUNTS ONE THROUGH NINE
## (Wire Fraud)

### A. Introduction

At times material to this indictment:

1.  At all relevant times, the defendant, ERIC JAMES STONE, was a resident of St. Augustine, Florida, in the Middle District of Florida.

2.  At all relevant times, VICTIM 1 was a resident of Mt. Airy, Maryland, in the District of Maryland.

3.  Fidelity Investments (Fidelity) is a financial services company headquartered in Boston, Massachusetts.  Fidelity offers a wide array of financial products and services including retirement planning services, 401(k) management, brokerage accounts, and wealth management.  Fidelity services customers nationwide including the states of Maryland and Florida.

4.     M&T Bank is a Federal Deposit Insurance Corporation (FDIC) insured bank headquartered in Buffalo, New York. M&T Bank serves customers across several northeastern states including the state of Maryland.

5.     NBKC Bank is an FDIC insured bank headquartered in Overland Park, Kansas. NBKC Bank serves customers nationwide including the states of Maryland and Florida through online banking services.

6.     Coinbase is cryptocurrency exchange platform. Coinbase services customers nationwide including the states of Maryland and Florida.

7.     RockItCoin is a Bitcoin Automatic Teller Machine (ATM) operator. RockItCoin services customers nationwide through the operation of Bitcoin ATMs including the states of Maryland and Florida.

8.     Bitcoin Depot is a Bitcoin ATM operator. Bitcoin Depot services customers nationwide through the operation of Bitcoin ATMs including the states of Maryland and Florida.

9.     Synchrony Bank is an FDIC insured bank headquartered in Stamford, Connecticut. Synchrony Bank services customers nationwide including the states of Maryland and Florida through online banking services.

10.     Cross River Bank is an FDIC insured bank headquartered in Fort Lee, New Jersey. Cross River Bank services customers nationwide including the state of Florida through online banking services.

11.    Wells Fargo Bank is an FDIC insured bank headquartered in San Francisco, CA. Wells Fargo Bank services customers nationwide including the states of Maryland and Florida.

12.    South State Bank is an FDIC insured bank headquartered in Winter Haven, Florida. South State Bank services customers across several states including the state of Florida.

13.    Regions Bank is an FDIC insured bank headquartered in Birmingham, Alabama. Regions Bank services customers across several states including the state of Florida.

14.    From approximately November 2007 through June 2021, STONE was an employee of Fidelity in Jacksonville, FL. STONE was a Financial Industry Regulatory Authority (FINRA) registered representative. STONE was terminated by Fidelity on or around June 3, 2021, due to allegations STONE solicited and obtained personal loans from his Fidelity clients. On or about March 2, 2023, FINRA barred STONE from acting as a broker or otherwise associating with a broker-dealer firm due to his conduct at Fidelity.

15.    During his employment at Fidelity, VICTIM 1 was a client of STONE's at Fidelity where STONE was financial advisor or representative on investment accounts held by VICTIM 1

16.    On or around May 4, 2021, STONE contacted VICTIM 1 and solicited a $30,000.00 personal loan from VICTIM 1. STONE emailed a signed Promissory Note to VICTIM 1. The Promissory Note was dated May 4, 2021 and stated

3

VICTIM 1 would loan $30,000.00 to STONE with the repayment of $30,000.00 and $1,000.00 interest due on May 31, 2021. After receiving the Promissory Note, VICTIM 1 wired $30,000.00 from VICTIM 1's bank account ending in #8788 at Synchrony Bank (Synchrony Bank #8788) to STONE.

17. STONE failed to pay back the loan by May 31, 2021. Throughout 2021 and into 2022, VICTIM 1 continued to follow up with STONE through phone calls, emails, and text messages requesting repayment of the loan. STONE repeatedly stated he would repay the loan, but failed to do so.

### B. The Scheme and Artifice

18. From in or about July 2022, and continuing through in or about September 2024, in the Middle District of Florida and elsewhere, the defendant,

ERIC JAMES STONE,

did knowingly devised and intend to devise, and participate in, a scheme and artifice to defraud and to obtain money and property from VICTIM 1 by means of materially false and fraudulent pretenses, promises, and representations, and promises, as more fully described herein.

### C. Manner and Means of the Scheme and Artifice

19. It was part of the scheme that STONE would communicate with VICTIM 1 via phone calls, text messages, and emails.

20. It was further part of the scheme that STONE created fictitious email accounts, which he used to communicate with VICTIM 1 for the purpose of executing the scheme.

4

21.    It was further part of the scheme that STONE used a fictitious email account, which STONE falsely represented to VICTIM 1 as the email account of an investigator from the State of Florida. On multiple occasions, STONE used the fictitious email account to contact VICTIM 1 and falsely represented that if VICTIM 1 were to pay fines on STONE's behalf, the principal balance and interest owed to VICTIM 1 would be released.

22.    It was further part of the scheme that STONE falsely represented to VICTIM 1 that initial payments made by VICTIM 1 through PayPal had triggered an investigation by PayPal ("the PayPal matter"), which supposedly caused STONE to incur more fees. STONE falsely represented that he hired lawyers to help assist with the investigation. STONE continued to request money from VICTIM 1 in order to help pay these fees.

23.    It was further part of the scheme that STONE used multiple fictitious email accounts, which STONE falsely represented to be the email accounts of employees of PayPal. On multiple occasions, STONE used the fictitious email accounts to solicit payments from VICTIM 1 in order to resolve the fictitious PayPal matter.

24.    It was further part of the scheme that STONE would send text messages to VICTIM 1 with screenshots of fictitious messages with attorneys that STONE falsely claimed were assisting STONE and VICTIM 1 with the settlement and resolution of the fictitious PayPal matter.

25.    It was further part of the scheme that STONE directed VICTIM 1 to open various bank and other financial accounts for the purpose of transferring funds from VICTIM 1's Fidelity Investment accounts and other savings accounts to STONE.

26.    It was further part of the scheme that STONE would direct VICTIM 1 to send funds to make payments from VICTIM 1's bank and other financial accounts to STONE using various methods including wires, checks, Zelle payments, cash deposits to Bitcoin ATMs, and other means.

27.    It was further part of the scheme that STONE would send Bitcoin wallet addresses and/or QR (Quick Response) codes for Bitcoin wallet addresses via text message to VICTIM 1 for the purpose of receiving funds from VICTIM 1.

28.    It was further part of the scheme that STONE directed VICTIM 1 to send check payments in a package from Maryland to STONE in Florida via the United States Postal Service.

29.    It was further part of the scheme that STONE falsely induced VICTIM 1 to perform at least 613 financial transactions totaling at least $2,037,103.

30.    It was further part of the scheme that STONE utilized his bank and other financial accounts to receive the funds from VICTIM 1.

31.    It was further part of the scheme that STONE utilized bank and other financial accounts of INDIVIDUAL 1 to receive funds from VICTIM 1 and to conceal the true nature and source of the proceeds.  STONE instructed and had VICTIM 1 deposit cash at Bitcoin ATMs to purchase Bitcoin, which was deposited

to wallets associated with INDIVIDUAL 1's Coinbase account. The Bitcoin was subsequently exchanged for United States currency and provided to STONE.

32. It was further part of the scheme that STONE used the funds from VICTIM 1 for his personal benefit including to fund gambling activities, travel, personal expenditures, and pay off personal debts.

### D. Execution of the Scheme and Artifice

33. On or about the date set forth below in each count, in the Middle District of Florida and elsewhere, the defendant,

ERIC JAMES STONE,

for the purposes of executing the scheme and artifice described above, transmitted, and caused to be transmitted, by means of wire communication in interstate and foreign commerce the writings, signs, signals, pictures and sounds described below, each transmission constituting a separate count:

| COUNT | DATE | DESCRIPTION OF WIRE COMMUNICATION |
|-------|------|-----------------------------------|
| ONE | November 3, 2022 | STONE sent VICTIM 1 a text message regarding a request to Zelle $1,367.00. In response to the text message, VICTIM 1 sent $1,367.00 via Zelle from VICTIM 1's M&T Bank Account #7770 to STONE's NBKC Bank Account #5579. |
| TWO | September 6, 2023 | STONE sent VICTIM 1 an email from a fictitious PayPal email account regarding a request for $5,865.43. In response to the email, VICTIM 1 sent $6,392.65 from VICTIM 1's Coinbase account to STONE's NBKC Bank Account #5579 on September 6, 2023. |

| | | |
|---|---|---|
| THREE | October 30, 2023 | STONE sent VICTIM 1 an email from a fictitious PayPal email account regarding a request for $9,750.00. In response to the email, VICTIM 1 deposited $9,750.00 cash to a RockItCoin Bitcoin ATM in Maryland purchasing 0.228559 Bitcoin which was deposited to STONE's Coinbase account on October 30, 2023. |
| FOUR | May 31, 2024 | STONE sent VICTIM 1 a text message containing a Q.R. code for a Bitcoin wallet address. Upon receipt of the Bitcoin wallet Q.R. code, VICTIM 1 deposited $10,000.00 cash to a RockItCoin Bitcoin ATM in Maryland purchasing 0.119854 Bitcoin which was deposited to INDIVIDUAL 1's Coinbase account on May 31, 2024. |
| FIVE | June 21, 2024 | STONE sent VICTIM 1 a text message regarding a request for payment of $37,000.00 related to the fictitious PayPal matter. In response to the text message, VICTIM 1 wired $37,000.00 from VICTIM 1's Synchrony Bank Account #8788 to STONE's Cross River Bank Account #4961 on June 21, 2024. |
| SIX | July 3, 2024 | STONE sent VICTIM 1 a text message regarding a request for payment of $70,000.00 related to the fictitious PayPal matter. In response to the text message, VICTIM 1 wired $70,000.00 from VICTIM 1's Synchrony Bank Account #8788 to STONE's Cross River Bank Account #4961 on July 3, 2024. |
| SEVEN | July 25, 2024 | STONE sent VICTIM 1 a text message containing a Q.R. code for a Bitcoin wallet address. Upon receipt of the Bitcoin wallet Q.R. code, VICTIM 1 deposited $5,000.00 cash to a RockItCoin Bitcoin ATM in Maryland purchasing 0.062851 Bitcoin which was deposited to Individual 1's Coinbase account on July 25, 2024. |
| EIGHT | July 30, 2024 | STONE sent VICTIM 1 a text message regarding a request for payment of $5,000.00 related to the fictitious PayPal matter. In response to the text message, VICTIM 1 wired $5,000.00 from VICTIM 1's Fidelity Investments Account #6392 to STONE's Regions Bank Account #8138 on July 30, 2024. |

| NINE | August 30, 2024 | STONE sent VICTIM 1 a text message containing a Q.R. code for a Bitcoin wallet address. Upon receipt of the Bitcoin wallet Q.R. code, VICTIM 1 deposited $4,600.00 cash to a Bitcoin Depot Bitcoin ATM in Maryland purchasing 0.055341 Bitcoin which was deposited to Individual 1's Coinbase account on August 30, 2024. |

All in violation of 18 U.S.C. § 1343.

### COUNT TEN
### (Mail Fraud)

1.      The allegations in counts one through nine of this Indictment are hereby realleged and incorporated by reference as though fully set forth herein.

2.      On or about September 5, 2024, in the Middle District of Florida and elsewhere, the defendant,

ERIC JAMES STONE,

for the purpose of executing and attempting to execute the aforesaid scheme and artifice and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, did knowingly and with intent to defraud cause certain items to be sent, delivered, and moved by the United States mail, that is, at STONE's request, VICTIM 1 mailed a package from Mount Airy, Maryland, via United States Postal Service to STONE in St. Augustine, Florida, which contained Check #102 in the amount of $8,000 and Check #104 in the amount of $23,000 payable to STONE from VICTIM 1's Wells Fargo Bank Account ending in #1533.

All in violation of 18 U.S.C. § 1341.

## COUNT ELEVEN
### (Money Laundering)

1.      The allegations in counts one through ten of this Indictment are hereby reallleged and incorporated by reference as though fully set forth herein.

2.      On or about July 5, 2024, in the Middle District of Florida and elsewhere, the defendant,

ERIC JAMES STONE,

did knowingly engage and attempt to engage in a monetary transaction by, through, and to financial institutions, affecting interstate commerce, in criminally derived property of a value greater than $10,000, that is, deposits, withdrawals, transfers, and exchanges described below of United States currency, funds, and monetary instruments in the amounts specified, such property having been derived from specified unlawful activity, that is, wire fraud in violation of 18 U.S.C. § 1343, specifically STONE wired $25,000 from STONE's Cross River Bank Account ending in #4961 to INDIVIDUAL 2's Bank Account at Bank of America.

All in violation of 18 U.S.C. § 1957.

## COUNTS TWELVE THROUGH FIFTEEN
### (Money Laundering)

1.      The allegations in counts one through eleven of this Indictment are hereby realleged and incorporated by reference as though fully set forth herein.

10

2.      On or about the dates set forth below, in the Middle District of Florida and elsewhere, the defendant,

ERIC JAMES STONE,

did conduct financial transactions affecting interstate and foreign commerce, which involved the proceeds of a specified unlawful activity, namely wire fraud in violation of 18 U.S.C. § 1343 as charged in this Indictment, knowing that the transaction was designed in whole and in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of said specified unlawful activity, knowing that the property involved in the financial transaction represented proceeds of some form of unlawful activity:

| COUNT | DATE | DESCRIPTION OF TRANSACTION |
|---|---|---|
| TWELVE | October 30, 2023 | $7,544.10 from STONE'S Coinbase account deposited to STONE's NBKC Bank Account #5579. |
| THIRTEEN | May 31, 2024 | $6,596.22 from INDIVIDUAL 1's Coinbase account deposited to STONE's Cross River Bank Account #4961. |
| FOURTEEN | July 25, 2024 | $2,131.87 from INDIVIDUAL 1's Coinbase account deposited to STONE's Regions Bank Account #8138. |
| FIFTEEN | August 30, 2024 | $2,576.28 from INDIVIDUAL 1's Coinbase account deposited to STONE's South State Bank Account #9232. |

All in violation of 18 U.S.C. § 1956(a)(1)(B)(i).

## FORFEITURE

1.      The allegations contained in Counts One through Fifteen are incorporated by referenced for the purpose of alleging forfeiture pursuant to the provisions of 18 U.S.C. §§ 981(a)(1)(C), 982(a)(1), and 28 U.S.C. § 2461(c).

2.      Upon conviction of a violation of 18 U.S.C. §§ 1341 and/or 1343, the defendant shall forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), any property, real or personal, which constitutes or is derived from the proceeds traceable to the violation.

3.      Upon conviction of violation of 18 U.S.C. §§ 1956 and/or 1957, the defendant shall forfeit to the United States, pursuant to 18 U.S.C. § 982(a)(1), any property, real or personal, involved in such offense, or any property traceable to such property.

4.      The property to be forfeited includes, but is not limited to, the following: an order of forfeiture in the amount of approximately $2,037,103, which represents the proceeds of the wire fraud and mail fraud schemes charged in Counts One through Ten.

5.      If any property described above, as a result of any act or omission of the defendant:

        a.  cannot be located upon the exercise of due diligence;

        b.  has been transferred or sold to, or deposited with, a third party;

        c.  has been placed beyond the jurisdiction of the court;

        d.  has been substantially diminished in value; or

e. has been commingled with other property which cannot be divided without difficulty;

the United States of America shall be entitled to forfeiture of substitute property under the provisions of 21 U.S.C. § 853(p), as incorporated by 28 U.S.C. § 2461(c) and 18 U.S.C. § 982(b)(1).

A TRUE BILL,

Foreperson

GREGORY W. KEHOE
United States Attorney

By: _____
JOHN CANNIZZARO
Assistant United States Attorney

By: _____
MICHAEL J. COOLICAN
Assistant United States Attorney
Deputy Chief, Jacksonville Division

13

FORM OBD-34
7/22/25 Revised

No.

## UNITED STATES DISTRICT COURT
### Middle District of Florida
### Jacksonville Division

## THE UNITED STATES OF AMERICA

vs.

## ERIC JAMES STONE

## INDICTMENT

Violations: 18 U.S.C. § 1343, 18 U.S.C. § 1341, 18 U.S.C. § 1957, and 18 U.S.C. § 1956(a)(1)(B)(i)

A true bill,

_____
Foreperson

Filed in open court this **23rd** day

of July, 2025.

_____
Clerk

Bail    $_____

GPO 863 525